# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

ARKANSAS UNITED and L. MIREYA REITH,
Plaintiffs-Appellees,

v.

JOHN THURSTON, in his official capacity as the Secretary of State of Arkansas; and
SHARON BROOKS, BILENDA HARRIS-RITTER, WILLIAM LUTHER, CHARLES ROBERTS,
JAMES SHARP, and J. HARMON SMITH, in their official capacities as members of the
Arkansas State Board of Election Commissioners,
Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:20-CV-5193 (Hon. Timothy L. Brooks)

## Consolidated Brief of Defendants-Appellants

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

MICHAEL A. CANTRELL
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2401
Dylan.Jacobs@ArkansasAG.gov

## SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT

This Court held in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment* that Section 3 of the Voting Rights Act does not provide a private right of action to enforce other portions of the VRA lacking an express cause of action. 86 F.4th 1204 (8th Cir. 2023). This case is about Section 208 of the VRA, which does not contain its own cause of action. The district court allowed this case to proceed on the theory that Section 3 provides a right of action to enforce Section 208. That decision does not survive *Arkansas State Conference*, and it should be reversed on that basis alone.

Should the Court reach the merits of Plaintiffs' challenge, reversal is also warranted because the district court applied the wrong legal standard to determine whether Section 208 preempts Arkansas's commonsense statute limiting private individuals from providing voting-booth assistance to more than six voters in any given election. Applying the proper standard, Arkansas's statute easily survives scrutiny. Indeed, there is no evidence in the record that Arkansas's more-than-a-decade-old restriction has ever burdened voters—let alone, as case law requires, unduly burdened them. Additionally, the district court's award of attorney's fees and costs was without statutory authority and excessive.

Because *Arkansas State Conference* resolves this case, Defendants believe oral argument is unnecessary and ask the Court to submit this case on the briefs.

# TABLE OF CONTENTS

Summary and Statement Regarding Oral Argument ................................. ii

Table of Contents ................................................................ iii

Table of Authorities ............................................................. v

Statement of Jurisdiction ......................................................... 1

Statement of the Issues Presented ................................................ 2

Statement of the Case ............................................................ 3

    A.  Ensuring Voting Access and Election Integrity ........................... 3

    B.  Section 208 of the Voting Rights Act Protects the Right to a Secret Ballot Free From Undue Influence, Not a Right to Language Assistance. ............................................... 5

    C.  Plaintiffs Arkansas United and Mireya Reith ........................... 6

    D.  Arkansas United exerted undue influence on voters. .................... 8

    E.  Background Procedural History and the Decision Below ................. 10

    F.  Clarification and Amended Order ...................................... 13

    G.  This Court Enters a Stay Pending Appeal .............................. 14

    H.  Order on Attorney's Fees and Appeal ................................. 14

    I.  Consolidation and Abeyance of Appeals ............................... 15

Summary of the Argument ....................................................... 17

Standard of Review .............................................................. 19

Argument ....................................................................... 20

  I.  Plaintiffs have no private right of action to enforce Section 208. ............... 20

  II.  Section 208 does not preempt Arkansas's six-voter provision. ................... 22

    A.  The six-voter provision is not preempted because a categorical reading of Section 208 conflicts with its text and common sense. ....................................................... 24

        1.  The district court's reading of Section 208 is inconsistent with the text. ............................................... 24

2. The district court's reading of Section 208 defies
common sense. .................................................................26

B. Arkansas's six-voter provision does not unduly burden
voters' Section 208 rights. ...........................................29

1. Plaintiffs have shown no burden at all. ...............................30

2. The six-voter provision serves Arkansas's important
and compelling interests in combating fraud, preventing
undue influence, and easing burdens on poll workers. .....................32

III. The district court erred in awarding attorney's fees and costs. .....................35

A. Only prevailing parties are entitled to fees and costs. ............................35

B. There is no statutory basis for fees and costs. .........................................36

C. Plaintiffs failed to get injunctions on half the laws they
challenged. ...................................................................37

D. Plaintiffs shouldn't get fees for their ill-fated Election Day
stunt. ...........................................................................40

E. Plaintiffs' fees and costs are excessive. .................................................41

F. The district court's award diverts funds from important
Arkansas programs. ........................................................44

Conclusion .................................................................................45

Certificate of Compliance ...........................................................46

Certificate of Service ..................................................................47

# TABLE OF AUTHORITIES

**Cases**

*Advantage Media, L.L.C. v. City of Hopkins*,
    511 F.3d 833 (8th Cir. 2008) ...............................................................36

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...........................................................................20

*Allen v. Milligan*,
    599 U.S. 1 (2023) ...............................................................................37

*Am. Humanist Ass'n v. Baxter Cnty.*,
    No. 3:14-CV-3126-TLB, 2016 WL 524654 (W.D. Ark. Feb. 5, 2016) .............42

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
    86 F.4th 1204 (8th Cir. 2023) .................................. ii, 2, 20, 21, 22, 36

*Bailey v. Jefferson Cnty.*,
    No. 5:18-CV-222-DPM, 2021 WL 4849077 (E.D. Ark. Oct. 18, 2021) ............42

*Brnovich v. Democratic Nat'l Comm.*,
    594 U.S. 647 (2021) ...............................................................32, 33, 35

*Bone Shirt v. Hazletine*,
    524 F.3d 863 (8th Cir. 2008) ...............................................................37

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*,
    532 U.S. 598 (2001) ...........................................................................36

*Day v. Celadon Trucking Servs., Inc.*,
    No. 4:09CV00031-SWW, 2015 WL 11090626 (E.D. Ark. Nov. 2, 2015) ........42

*DiPietrae v. City of Philadelphia*,
    666 A.2d 1132 (Pa. Commw. Ct. 1995) ...........................................27

*Doe v. Nixon*,
    716 F.3d 1041 (8th Cir. 2013) .............................................................36

*Emery v. Hunt*,
    272 F.3d 1042 (8th Cir. 2001) .............................................................41

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ........................................................................2, 39

*Francis v. Gamdan Servs. LLC*,
  No. 4:22-CV-00094-BRW, 2022 WL 2990705 (E.D. Ark. July 28, 2022) .......42

*Gruttemeyer v. Transit Auth.*,
  31 F.4th 638 (8th Cir. 2022) ........................................................................19, 44

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..........................................................2, 35, 37, 39, 44

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  572 U.S. 559 (2014) ...................................................................................19

*Horne v. Flores*,
  557 U.S. 433 (2009) ...................................................................................44

*Little Rock Sch. Dist. v. Arkansas*,
  674 F.3d 990 (8th Cir. 2012) ......................................................................42

*McFadden v. United States*,
  576 U.S. 186 (2015) ...................................................................................24

*Merck Sharp & Dohme Corp. v. Albrecht*,
  587 U.S. 299 (2019) ...................................................................................23

*Miller v. Thurston*,
  967 F.3d 727 (8th Cir. 2020) ......................................................................30

*MKB Mgmt. Corp. v. Stenehjem*,
  795 F.3d 768 (8th Cir. 2015) ......................................................................19

*Ohio Democratic Party v. Husted*,
  834 F.3d 620 (6th Cir. 2016) ...............................................................32, 34

*Org. for Black Struggle v. Ashcroft*,
  978 F.3d 603 (8th Cir. 2020) ......................................................................29

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ...................................................................................43

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .............................................................................43, 44

*Powell v. Alabama*,
  287 U.S. 45 (1932) .....................................................................................27

*Priorities USA v. Nessel*,
  487 F. Supp. 3d 599 (E.D. Mich. 2020) ...............................................2, 29, 31

*Priorities USA v. Nessel*,
  860 F. App'x 419 (6th Cir. 2021) ................................................................29, 31

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) (per curiam) ..........................................................................32

*Qualkinbush v. Skubisz*,
  826 N.E.2d 1181 (Ill. APPCt. 2004).................................................................27

*Ray v. Texas*,
  No. 2-06-CV-385, 2008 WL 3457021 (E.D. Tex. Aug. 7, 2008) ...23, 27, 29, 30, 33

*Rosemann v. St. Louis Bank*,
  858 F.3d 488 (8th Cir. 2017) ..............................................................................19

*Rounds v. S. Heritage Health & Rehab., LLC*,
  No. 5:12-CV-276-DPM, 2015 WL 1119955, at *1 (E.D. Ark. Mar. 6, 2015)...43

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997).............................................................................................32

*United States v. Gonzales*,
  520 U.S. 1 (1997).................................................................................................25

*United States v. Gonzalez-Lopez*,
  548 U.S. 140 (2006).............................................................................................27

*Vega v. Tekoh*,
  597 U.S. 134 (2022).........................................................................................2, 37

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008).......................................................................................23, 30

*Wheat v. United States*,
  486 U.S. 153 (1988).............................................................................................27

*Wyeth v. Levine*,
  555 U.S. 555 (2009).............................................................................................23

**Statutes and Rules**

Ark. Code Ann. 5-4-402(b)...........................................................................26, 27

Ark. Code Ann. 7-5-103(a)(8) ...............................................................................3

Ark. Code Ann. 7-1-103(a)(19)(C) ........................................................4, 14, 31, 38

Ark. Code Ann. 7-5-103(a)(24) ...................................................................3

Ark. Code Ann. 7-5-103(b)(1) ..............................................................14, 38

Ark. Code Ann. 7-5-310(a)(1) ...................................................................3

Ark. Code Ann. 7-5-310(a)(2)(C) ...............................................................3

Ark. Code Ann. 7-5-310(a)(3) ...................................................................3

Ark. Code Ann. 7-5-310(b)(1) ................................................................3, 4

Ark. Code Ann. 7-5-310(b)(4)(A)(i) .....................................................3, 9, 33

Ark. Code Ann. 7-5-310(b)(4)(A)(ii)(a) ..................................................9, 33

Ark. Code Ann. 7-5-310(b)(4)(B) .............................................4, 14, 17, 27, 38

Ark. Code Ann. 7-5-310(b)(5) .........................................................4, 14, 38

28 U.S.C. 1291 ....................................................................................1

28 U.S.C. 1331 ....................................................................................1

52 U.S.C. 10310(e) ..........................................................................36, 37

52 U.S.C. 10508 .................................................. 2, 5, 11, 17, 21, 24, 25

Fed. R. Civ. P. 58(a)(3) ...........................................................................1

## Legislative Materials

2003 Ark. Act 1308, 84th General Assembly, Reg. Sess. (Apr. 14, 2003) ...............3

2009 Ark. Act 658, sec. 1, 87th General Assembly, Reg. Sess. (Mar. 27, 2009) .....3

Pub. L. No. 91-285, 84 Stat. 315 (1970) ......................................................5

Pub. L. No. 94-73, 89 Stat. 400 (1975) ........................................................5

Pub. L. No. 97-205, 96 Stat. 131 (1982) ......................................................5

S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982) ............. 2, 5, 12, 17, 23, 25, 29, 33

## Books and Articles

Jay Barth, *Election Fraud*, CALS Encyclopedia of Arkansas (January 25, 2018) .10

Tom Glaze, *Waiting for the Cemetery Vote: The Fight to Stop Election Fraud in Arkansas* (2011) ................................................................................10

Webster's Third New International Dictionary (1976) ...........................................25

# STATEMENT OF JURISDICTION

The district court asserted jurisdiction under 28 U.S.C. 1331. On September 7, 2022, the district court entered its Amended Memorandum Opinion and Order, APP495, R. Doc. 179, and Amended Judgment, APP534, R. Doc. 180, granting in part and denying in part Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment. On September 8, 2022, Defendants timely filed an appeal of that order and judgment. APP536, R. Doc. 181.

On January 13, 2023, the district court entered its Memorandum Opinion and Order, SAPP84, R. Doc. 199, granting in part and denying in part Plaintiffs' motion for attorney's fees and costs. On January 25, 2023, Defendants timely filed an appeal of that order. SAPP96, R. Doc. 200; *see* Fed. R. Civ. P. 58(a)(3) (no separate judgment document required for order granting attorney's fees).

This Court has appellate jurisdiction pursuant to 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the district court erred in finding a private right of action ex-

ists under Section 208.

> **Apposite Authority:** *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023).

2.      Whether the district court erred in concluding that Section 208 implic-

itly preempts Arkansas's six-voter provision.

> **Apposite Authority:** 52 U.S.C. 10508; *Priorities USA v. Nessel*, 487 F. Supp. 3d 599 (E.D. Mich. 2020); S. Rep. No. 97-417, 97th Cong., 2d Sess. (1982).

3.      Whether the district court erred in awarding attorney's fees and costs

to Plaintiffs.

> **Apposite Authority:** *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Vega v. Tekoh*, 597 U.S. 134 (2022); *Farrar v. Hobby*, 506 U.S. 103 (1992).

## STATEMENT OF THE CASE

A.    Ensuring Voting Access and Election Integrity

Arkansas's election laws are designed to make voting easy and cheating hard.  To ensure ballot secrecy and prevent undue influence on voters, poll workers are responsible for ensuring that every voter is "provided the privacy to mark his or her ballot."  Ark. Code Ann. 7-5-310(a)(1).  By law, poll workers police who may enter a polling site, *id.* 7-5-310(a)(3), who may stay within 100 feet of a polling site, *id.* 7-1-103(a)(24), and any electioneering at or near polling sites, *id.* 7-1-103(a)(8).

Only authorized poll workers are normally allowed near a voter's booth.  *Id.* 7-5-310(a)(2)(C).  That said, certain voters can be accompanied in the booth by "one (1) person named by the voter."  *Id.* 7-5-310(b)(4)(A)(i).  This is an exceptional accommodation created in 2003 for voters who cannot mark and cast their ballot on their own.  *Id.* 7-5-310(b)(1); 2003 Ark. Act 1308, 84th General Assembly, Reg. Sess. (Apr. 14, 2003) (amending Ark. Code Ann. 7-5-310).

To ensure the process is not exploited for improper purposes, the law was further amended in 2009 to protect against abuse of this exceptional accommodation by would-be professional voter assistants.  2009 Ark. Act 658, sec. 1, 87th General Assembly, Reg. Sess. (Mar. 27, 2009) (amending Ark. Code Ann. 7-1-103); *id.*, sec. 3 (amending Ark. Code Ann. 7-5-310).  That law provides that "[n]o

person other than [an election official] shall assist more than six (6) voters in marking and casting a ballot at an election." Ark. Code Ann. 7-5-310(b)(4)(B).  A person who assists more than six voters in violation of this provision commits a Class A misdemeanor. *Id.* 7-1-103(a)(19)(C), (b)(1).  But Arkansas law does not subject the *voter* to any penalty. *See id.* 7-1-103(a)(19)(C) (prohibiting only "[*p*]*roviding* assistance" to more than six voters (emphasis added)).  Arkansas law also includes a tracking provision which requires "poll workers at the polling site to make and maintain a list of the names and addresses of all persons assisting voters." *Id.* 7-5-310(b)(5).

The six-voter provision "is designed to prevent an abuse of the assistance process," including "undue influence on how the voter vote[s] their ballot." APP239, R. Doc. 134-5 at 7; APP312, R. Doc. 134-7 at 10; *see* APP283, R. Doc. 134-6 at 8.  It is "a structural defense," APP239, R. Doc. 134-5 at 7, that relieves poll workers of the burden of "judg[ing] whether an assistant is there for the right reasons or wrong reasons." *Id.*  Allowing individuals to enter the voting booth with an unlimited number of voters would "increase . . . greatly" the potential for fraud and undue influence and render poll workers' tasks more difficult.  APP283, R. Doc. 134-6 at 8.

B.   Section 208 of the Voting Rights Act Protects the Right to a Secret Ballot Free From Undue Influence, Not a Right to Language Assistance.

The original Voting Rights Act of 1965 prohibited practices designed to frustrate African-Americans' exercise of the right to vote.  The VRA was amended several times between 1970 and 1982.  Pub. L. No. 91-285, 84 Stat. 315 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982). The bulk of the 1982 Amendments were modifications to preexisting sections of the VRA.

In contrast, the VRA provision at issue here, Section 208, codified at 52 U.S.C. 10508, was a new provision tacked onto the end of the 1982 Amendments. It reads, in its entirety: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  52 U.S.C. 10508.  It applies nationwide and was designed to protect the right to a secret ballot free from undue influence or manipulation for "blind, disabled, or illiterate persons."  *See id.*

Congress passed Section 208 upon finding that blind, disabled, and illiterate citizens "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated."  S. Rep. No. 97-417, 97th Cong., 2d Sess., at 62.  Citing a National Federation of the Blind letter, the Senate Report explained that

"having assistance provided by election officials discriminates against those voters who need such aid because it infringes upon their right to a secret ballot and can discourage many from voting for fear of intimidation or lack of privacy." *Id.* at 62 n.207. The Report expressly "recognize[d] the legitimate right of any state to establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." *Id.* at 63. "State provisions would be preempted only to the extent that they unduly burden the right recognized in [section 208], with that determination being a practical one dependent upon the facts." *Id.*

C.     Plaintiffs Arkansas United and Mireya Reith

Plaintiffs are Arkansas United, an organization that receives funds to call and text Hispanic voters, APP42, R. Doc. 79 at 17; APP121, 133, R. Doc. 134-1 at 27, 39, and its director, Mireya Reith. For the 2020 election Arkansas United claims it chose to divert resources from its phone-banking mission to attempt to provide language services to voters in Arkansas. The record established that Arkansas's six-voter provision had no effect on their efforts.

In fact, their assistance turned out to be unneeded. Arkansas United concedes that when it inquired about sending bilingual volunteers to offer assistance at the polls, it was informed that its "services were not needed because the county would handle the provision of language services to voters." APP39, R. Doc. 79 at

14. For her part, Reith never provided language assistance at the polls because no voters lacked access to language assistance. APP138, R. Doc. 134-1 at 44. And although Arkansas United had 16 staff and volunteers, APP112, R. Doc. 134-1 at 18—all 16 of whom were trained to provide language assistance, APP116, 142, R. Doc. 134-1 at 22, 48—Reith conceded "[t]heir interpretation services weren't needed," either. APP116-17, 141-42, R. Doc. 134-1 at 22-23, 47-48.

Despite the lack of any need for language assistance at the polls, on the afternoon of Election Day 2020, *see, e.g.*, APP137, R. Doc. 134-1 at 43; APP217, R. Doc. 134-3 at 12, Arkansas United sent a few people from its office to the nearby Springdale Civic Center in search of voters. The Civic Center was the only place that Arkansas United attempted to provide language assistance that day, APP227-28, R. Doc. 134-4 at 8-9, but there were already three bilingual poll workers providing assistance there. APP231, R. Doc. 134-4 at 12.

The six-voter provision did not prevent Plaintiffs from assisting any person. APP227, R. Doc. 134-4 at 8; APP212-13, R. Doc. 134-3 at 7-8; APP140, R. Doc. 134-1 at 46. None of Arkansas United's staff or volunteers asked to assist more than six voters at the polls. APP158, R. Doc. 134-1 at 64. Moreover, Plaintiffs did not identify a single person who lacked access to the assistant of their choice. APP213, R. Doc. 134-3 at 8, APP140, R. Doc. 134-1 at 46. And no voter who

needed assistance to vote was denied that assistance.  APP289, R. Doc. 134-6 at 14; APP328, 337, R. Doc. 134-7 at 26, 35; APP342, R. Doc. 134-8 at 4.

No voter specifically chose to be assisted by Arkansas United staff. APP226, R. Doc. 134-4 at 7.  As Fonseca explained, the voters "didn't choose me. There was a person managing the line. . . . [H]e would direct those persons to the volunteers who were in the area at that moment.  If it was me, me.  If it was another one, another one."  *Id.*  Fonseca clarified that by "another one," she means that the person to whom the voter was directed could have been a bilingual poll worker.  *Id.*  She explained, "It was not like 'I prefer this person to go to this one.' It was like the one who was available, go there."  *Id.*  Similarly, Gonzalez "didn't know any of the people [she] helped."  APP211, R. Doc. 134-3 at 6.  She explained that voters did not choose her specifically but were directed to her by a bilingual poll worker.  *Id.*  They didn't say, "I want that lady," pointing to Gonzalez, nor did they "call [her] by name and say 'I want Ms. Gonzalez to assist me.'"  *Id.*

In sum, Arkansas United's assistance efforts were entirely unimpeded by the six-voter provision.

### D.   Arkansas United Exerted Undue Influence on Voters.

The danger of undue influence inherent in allowing even well-intentioned persons to accompany voters into the booth is apparent from the record below.  An Arkansas United staff person, Gonzalez, testified to her violation of Arkansas law

while providing language assistance in the voting booth. The law provides that a person "may assist thevoter in marking and casting the ballot according to the wishes of the voter," but he or she must do so "without any comment or interpretation," on pain of being "removed from the polling site." Ark. Code Ann. 7-5-310(b)(4)(A)(i), (ii)(a).

Gonzalez had no background in local government and did not know, for example, the functions of a county judge. APP213, 218-19, R. Doc. 134-3 at 8, 13-14. She received no training in explaining the various positions and measures on the ballot. APP213, R. Doc. 134-3 at 8. Despite that, Gonzalez testified that when voters didn't understand what was on the ballot, she "would explain them to the best of [her] knowledge what each position . . . did." APP212, 213, R. Doc. 134-3 at 7, 8. More than just translating the ballot, she would "give them [her] understanding of what each of the positions that were up for election do" and "summarize as best [she] could" the ballot measures. *Id.*

After translating one of the ballot measures to a voter in the voting booth, Gonzalez explained that the voter "turned to [her and] sa[id], what does that mean? So [Gonzalez] had to say well, it's asking you if you want to vote for or against XYZ. Again, [the voter] was like, well, what does that mean, what does that do?" APP219, R. Doc. 134-3 at 14. "To the best of [her] knowledge, [Gonzalez] tried to" answer those questions. *Id.* She relied on a flyer that she created that

described each position based on general definitions that she found on the Internet. APP213, 214, 218, R. Doc. 134-3 at 8, 9, 13.

If an election official had observed Gonzalez providing such commentary, she would have been removed from the polling place for exerting undue influence under Arkansas law. Yet, because such violations can go undetected (as in Gonzalez's case), the six-voter provision is needed to ensure that bad actors can only reach a limited number of voters. This is important in Arkansas, which has a well-documented history of undue influence and manipulation of voters' choices in the voting booth. *See* Tom Glaze, *Waiting for the Cemetery Vote: The Fight to Stop Election Fraud in Arkansas* (2011) (describing Arkansas's history of "dire" and "perniciously ignored" fraud and undue influence on voters); Jay Barth, *Election Fraud*, CALS Encyclopedia of Arkansas (January 25, 2018).[1]

E.    Background Procedural History and the Decision Below

At 11:21 p.m. the night before Election Day in November 2020, Plaintiffs filed a TRO/preliminary-injunction motion against two state entities (the State Board of Election Commissioners and the Secretary of State), and three Arkansas counties, alleging that the six-voter provision burdens their ability to provide assistance to "limited English proficient" voters at the polls, in purported conflict with

---

[1] https://encyclopediaofarkansas.net/entries/election-fraud-4477/

Section 208. 52 U.S.C. 10508; s*ee* APP17, R. Doc. 35 at 3. They challenged the six-voter limit, the tracking provision, and the statute making a violation of the six-voter provision a misdemeanor offense. APP35, R. Doc. 79 at 7. The district court denied Plaintiffs' motion, noting "Plaintiffs have not offered any explanation why they waited until the night before the election to bring this suit. The six-person limit challenged here was added to the statute in 2009. Two presidential elections have occurred in the interim, as well as three midterm elections." APP24; R. Doc. 35 at 10-11 (citation omitted).

Defendants moved for dismissal, arguing, among other things, that Plaintiffs lack a private right of action and that the district court lacked jurisdiction due to Plaintiffs' lack of standing and their inability to overcome Defendants' sovereign immunity. The court denied that motion. APP50, R. Doc. 102. The case proceeded through discovery, and the parties filed and fully briefed cross-motions for summary judgment. APP93, R. Doc. 134.

Nearly a year later, and a mere 66 days before voting began for the 2022 General Election, the district court enjoined Defendants from enforcing Arkansas's six-voter provision. APP482-83, R. Doc. 168 at 37-38. The district court again rejected Defendants' arguments that Plaintiffs lack a private right to enforce the VRA, are not *voters* who can claim Section 208 rights, and haven't named even a

single person whose voting rights were impaired. APP461-70, 474-76, R. Doc. 168 at 16-25, 29-31.

The district court applied the wrong legal standard to determine whether Arkansas's six-voter provision violated Section 208, rejecting the undue-burden standard contemplated by Congress in favor of what it called a "straightforward conflict preemption analysis." APP22, R. Doc. 35 at 8. That approach conflicted with Congress's declaration—in an accompanying Senate Report that other courts have consistently relied upon to determine the appropriate standard of review—that "[s]tate provisions would be preempted only to the extent that they unduly burden the right recognized in [Section 208], with that determination being a practical one dependent upon the facts." S. Rep. No. 97-417, 97th Cong., 2d Sess., at 63; *see* APP480-82, R. Doc. 168 at 35-37 (district court rejecting the Senate Report); *but see* APP478, R. Doc. 168 at 33 (district court relying on the Senate Report).

The district court also rejected Defendants' argument that—contrary to Plaintiffs' claims—Section 208 does not contemplate unfettered voter discretion in choosing an assistant. Defendants pointed out that if Section 208 preempted any state law that interfered with a voter's choice of assistor, even criminal laws would be in jeopardy. After all, incarceration would prevent a person from assisting a voter. Common sense dictates that Congress could not have intended Section 208

to preempt penal laws, yet the district court's logic would entail just that. APP481, R. Doc. 168 at 36.

The district court held that the tracking provision is not preempted by Section 208. APP531, R. Doc. 179 at 37. It also declined to enjoin the criminal penalties associated with violating Arkansas election law. APP533, R. Doc. 179 at 39.

## F. Clarification and Amended Order

The relief the district court ordered was confusing. On one hand, it appeared *not* to enjoin Arkansas's 72 nonparty counties from enforcing the six-voter provision. *See* APP483 n.15, R. Doc. 168 at 38 n.15. But it simultaneously enjoined "all persons acting in concert with" Defendants from enforcing the law, APP483, R. Doc. 168 at 38, leaving unclear whether the nonparty county boards and their poll workers were considered to be acting "in concert with" Defendants. So Defendants moved for clarification.

The district court amended its order, newly enjoining the State Board to issue a memorandum concerning the court's rulings to all county boards by September 16, 2022—a mere 38 days before voting began. APP532 & n.16, R. Doc. 179 at 38 & n.16. Given the proximity of this deadline and the approaching election, Defendants sought an emergency stay of the injunction, which the district court denied in a text-only order. R. Doc. 184.

G.    This Court Enters a Stay Pending Appeal

Defendants then sought an emergency stay from this Court.  Emergency Motion to Stay, *Ark. United v. Thurston*, No. 22-2918, Entry ID No. 5197332 (Sept. 12, 2022).  The Court first granted a temporary administrative stay pending decision on Defendants' motion, Order, *id.*, Entry ID No. 5197422 (Sept. 13, 2022), and then a full stay of the injunction.  Order, *id.*, Entry ID No. 5202512 (Sept. 28, 2022).  The 2022 election then proceeded with the six-person voter provision in place.

H.    Order on Attorney's Fees and Appeal

Meanwhile, back at the district court, Plaintiffs filed a motion for attorney's fees, SAPP20, R. Doc. 173, despite lacking any legitimate statutory basis for recovering them.  Defendants opposed the motion, R. Doc. 193, pointing out that although the district court had enjoined the six-voter provision, Ark. Code Ann. 7-5-310(b)(4)(B), it had rejected Plaintiffs' request for an injunction of the tracking requirement, *id.* 7-5-310(b)(5) (requiring anyone assisting a disabled voter to provide his or her name and address to be maintained on a list kept by poll workers); APP533, R. Doc. 179 at 39, as well as their request for an injunction of that law's criminal penalties.  *Id.* 7-1-103(a)(19)(C), 7-1-103(b)(1); APP533, R. Doc. 179 at 39.  Thus, Plaintiffs failed to get an injunction on fully half of the laws they challenged.

Nevertheless, the district court refused to credit Defendants' successful defense of the laws governing the tracking requirement and its penalties, and it erroneously awarded Plaintiffs $103,030.43 in attorney's fees and costs. SAPP94, R. Doc. 199 at 11. Although the district court made a few marginal reductions in rates, hours, and costs on other grounds, SAPP90-92 R. Doc. 199 at 7-9, it also wrongly rejected Defendants' remaining arguments that Plaintiffs' fees were excessive and that fees were altogether improper for work related to Plaintiffs' ill-conceived Election Day preliminary-injunction motion. SAPP92, R. Doc. 199 at 9.

Defendants timely appealed the order awarding attorney's fees, SAPP96, R. Doc. 200.

I.     <u>Consolidation and Abeyance of Appeals</u>

Back in this Court, the parties jointly recognized that the threshold legal question presented in these appeals—whether there is a private right of action to enforce Section 208 of the Voting Rights Act—"is similar to the question squarely presented in *Arkansas State Conference NAACP* [*v. Arkansas Board of Apportionment*, No. 22-1395 (8th Cir.)], namely, whether Section 2 of the Voting Rights Act is privately enforceable." Joint Motion to Hold Appeal in Abeyance, *Ark. United v. Thurston*, No. 22-2918, Entry ID No. 5239587 (Jan. 26, 2023).

The parties also jointly moved to consolidate the attorney's-fees appeal with the merits appeal and to hold both in abeyance pending the outcome of *Arkansas*

*State Conference*.  Joint Motion to Consolidate and Hold Appeal in Abeyance, *Ark.*

*United v. Thurston*, No. 23-1154, Entry ID No. 5340117 (Jan. 27, 2023).  The

Court granted consolidation and held the appeals in abeyance pending a decision in

*Arkansas State Conference*.  Order*, Ark. United v. Thurston*, No. 23-1154, Entry

ID No. 5251858 (March 6, 2023).

On November 20, 2023, *Arkansas State Conference* held there is no private

right of action to enforce Section 2 of the Voting Rights Act.  86 F.4th 1204, 1218

(8th Cir. 2023).  Thereafter, the Court vacated the abeyance in these consolidated

appeals and recommenced briefing.  Corrected Order, *Ark. United v. Thurston*,

Nos. 22-2918, 23-1154, Entry ID No. 5367597 (Feb. 27, 2024).

Plaintiffs later sought an additional abeyance to seek an indicative ruling

from the district court on a motion to amend their complaint, in order to add a

claim for relief under 42 U.S.C. 1983, which they did not plead below.  Entry ID

No. 536520.  The Court denied that motion.  Order, Entry ID No. 5391798 (May

8, 2024).

## SUMMARY OF THE ARGUMENT

Section 208 of the VRA sets forth a prophylactic rule that preserves the secret ballot of "blind, disabled, or illiterate" voters from undue influence or manipulation. 52 U.S.C. 10508; S. Rep. No. 97-417, 97th Cong., 2d Sess., at 62-63. The district court erred in concluding that Section 208 implicitly preempts Arkansas's six-voter provision. Ark. Code Ann. 7-5-310(b)(4)(B). Plaintiffs are not blind, disabled, or illiterate. They aren't even *voters*. Instead, Arkansas United is an organization that receives funds to call and text Hispanic voters. Arkansas United and its director assert that Arkansas's six-voter provision impairs efforts to provide language assistance to "limited English proficient" persons. That is wrong, and this Court should reverse the district court's order for three reasons.

First, Plaintiffs lack a cause of action to enforce Section 208. Instead, consistent with this Court's recent decision in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, the district court was required to dismiss this case. That decision held that Section 3 of the VRA does not itself contain a cause of action, and thus cannot supply a cause of action to sue under other sections of the VRA that also lack their own cause of action. The district court allowed this case to proceed only by doing exactly what *Arkansas State Conference* forbids—using Section 3 to imply a cause of action for Section 208. This Court should therefore reverse and dismiss this case.

Second, Plaintiffs' claim would likewise fail on the merits and the district court erred in concluding otherwise. The district court applied the wrong standard—what it called a straightforward conflict preemption analysis—to find that Section 208 implicitly preempts Arkansas's six-voter provision. Instead, the district court should have applied the undue burden standard so familiar in election cases. Under that standard, the challenged provision easily survives because Plaintiffs haven't shown that it imposes any burden and the record demonstrates the six-voter provision serves Arkansas's important and compelling interests in combating fraud, preventing undue influence, and easing burdens on poll workers. The district court was required to uphold it.

Moreover, even if the undue burden standard didn't apply, reversal would still be required because the district court's conclusion that Section 208 confers virtually unfettered discretion to pick a voting assistant conflicts with Section 208's text and—as the district court itself was compelled to recognize—common sense.

Third, the district court erred in awarding attorney's fees and costs to Plaintiffs. If this Court reverses on the merits, then Plaintiffs are not prevailing parties and aren't entitled to any fees. But even absent reversal, the district court's fee award lacked statutory authority and cannot be supported on equitable grounds.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's grant or denial of summary judgment," *Rosemann v. St. Louis Bank*, 858 F.3d 488, 494 (8th Cir. 2017), "and its permanent injunction for an abuse of discretion," *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 771 (8th Cir. 2015). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 n.2 (2014) (quotation omitted). This Court "review[s] legal questions related to the awarding of attorney's fees de novo and review[s] the amount of fees and costs awarded for abuse of discretion." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 649 (8th Cir. 2022).

# ARGUMENT

## I.     Plaintiffs have no private right of action to enforce Section 208.

The district court erred in finding a private right of action exists under Section 208 when it denied Defendants' motion to dismiss, APP65-66, R. Doc. 102 at 16-17, and again when it denied Defendants' motion for summary judgment. APP516 n.12, 524, R. Doc. 179 at 22 n.12, 30 (citing R. Doc. 102 at 12-19).[2]  This Court's subsequent decision in *Arkansas State Conference*, which held private parties lack a right of action to sue under Section 2 of the VRA, squarely forecloses any right of action to enforce Section 208.

"The Supreme Court has been increasingly reluctant to" imply causes of action in federal statutes "in recent years, often citing the general principle that 'private rights of action to enforce federal law must be created by Congress.'" *Ark. State Conf.*, 86 F.4th at 1209 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). "Gone are the days of divining congressional purpose." *Id.* (quotation omitted).  Where a statute does not "say when a private right of action is available . . . it is not [a court's] place to fill in the gaps, except when 'text and structure' require it." *Id.* (quoting *Sandoval*, 532 U.S. at 288).  "Under the modern test for

---

[2] The district court at one point mistakenly stated Defendants agree Plaintiffs have a cause of action under Section 208.  APP516 n.12, R. Doc. 179 at 22 n.12.  To the contrary, Defendants have vigorously contested that claim.

implied rights of action, Congress must have both created an individual right *and* given private plaintiffs the ability to enforce it." *Id.* Applying that test, Section 208 lacks a private remedy for the same reasons this Court held Section 2 lacks one.

To start, "[e]veryone agrees that," like Section 2, the text of Section 208 "itself contains no private enforcement mechanism." *Id.* at 1210. Indeed, the statute speaks only of the assistance that a voter "may be given." 42 U.S.C. 10508. Section 208 is silent as to "who can enforce it." *Ark. State Conf.*, 86 F.4th at 1210 (emphasis omitted). Thus, "[w]e must look elsewhere for the who." *Id.*

The district court's sole basis for concluding that Section 208 is privately enforceable was Section 3 of the VRA, which contemplates "proceeding[s] instituted by . . . an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." APP66, R. Doc. 102 at 17 (quoting 52 U.S.C. 10302). That court stated that "[t]his language explicitly creates a private right of action to enforce the VRA." APP65-66, R. Doc. 102 at 16-17.

This Court held the opposite in *Arkansas State Conference*. Rather than providing a cause of action itself, Section 3 (added to the VRA in 1982) merely "recognizes that *some* voting-rights protections are enforceable by someone other than the Attorney General," and where that is true, Section 3 "provides for various forms of equitable and other relief." *Ark. State Conf.*, 86 F.4th at 1211. The Court

rejected the alternative view that Section 3 implicitly "created new private rights of action for every voting-rights statute that did not have one," which would have required it to "conclude that Congress hid the proverbial elephant in a mousehole." *Id.* at 1212 (cleaned up). Instead, "[p]rivate plaintiffs can sue under statutes like [Section] 1983, where appropriate, and the Attorney General can do the same under statutes like [Section] 12" of the VRA. *Id.* at 1213. "And then [Section] 3 sets ground rules in the types of lawsuits each can bring." *Id.* The district court's reliance on Section 3 for a private right of action to enforce Section 208 thus "does not work." *Id.* Like Section 2, Section 208 may only be enforced by the Attorney General.

Neither the district court nor Plaintiffs asserted any basis for implying a private right of action for Section 208 beyond that which this Court explicitly rejected in *Arkansas State Conference*. Ultimately, "Congress knows how to create a cause of action, and it did not do so here." *Id.* at 1213 (cleaned up). Because Plaintiffs lack a private right of action to enforce Section 208, this Court must reverse the district court's judgment.

## II. Section 208 does not preempt Arkansas's six-voter provision.

If this Court reaches the merits of Plaintiffs' Section 208 claims, Plaintiffs' claims fare no better and this Court should reverse the district court because it

applied the wrong legal standard, and applying the correct standard Arkansas's statute easily survives scrutiny.

Section 208 does not preempt Arkansas's six-voter provision. The Constitution vests States with a "broad power" to operate elections. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). Federal courts "assum[e] that the historic police powers of the States" are *not* preempted "unless that was the clear and manifest purpose of Congress." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 311 (2019) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

Here, Congress expressly "recognize[d] the legitimate right of any state to establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." S. Rep. No. 97-417, 97th Cong., 2d Sess., at 63. Consistent with Section 208, Arkansas's six-voter provision is designed to protect voters' right to a secret ballot, free from undue influence and manipulation. Therefore, as with all other election-law regulations, a court analyzing a Section 208 claim appropriately "defers to the decision of the elected representatives of the state, provided the challenged regulation does not unduly burden the right to vote." *Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008).

A. The six-voter provision is not preempted because a categorical read-ing of Section 208 conflicts with its text and common sense.

The district court wrongly concluded that the six-voter provision "facially conflicts with § 208," APP530, R. Doc. 179 at 36, that "compliance with both [is] impossible," APP526, R. Doc. 179 at 32, and that it "poses an obstacle" to Con-gress's purpose to protect the right to a secret ballot. APP527, R. Doc. 179 at 33. the district court's conclusion depends on a categorical interpretation of Section 208 that requires States to afford voters unfettered discretion in choosing an assis-tant. That is not supported by text or common sense.

1. The district court's reading of Section 208 is inconsistent with the text.

Section 208 provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. 10508. The district court misread "a person of the voter's choice" to create an unlimited set of persons from which a voter can choose.

But the text Congress chose belies that reading. Its use of the indefinite arti-cle "a" makes clear that a voter's choice is not unlimited. "When used as an indef-inite article, 'a' means some undetermined or unspecified particular." *McFadden v. United States*, 576 U.S. 186, 191 (2015) (cleaned up). If Congress had intended

24

for voters to have unfettered discretion to choose an assistant, it would have instead written that "any voter" may be assisted by "*any* person of the voter's choice." *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting Webster's Third New International Dictionary 97 (1976)). But that's not what Section 208 says. Instead, Section 208 provides that "any voter" may have the assistance of "*a* person of the voter's choice." 52 U.S.C. 10508 (emphasis added). If Congress wished to provide a voter with boundless or absolute authority to choose a person to provide assistance, it could have said that. Congress wrote the statute to apply to "any voter"; it could have similarly written the same sentence to allow a voter to be assisted by "any person of the voter's choice."

Instead, the language Congress chose does not foreclose the State's ability to regulate the class of persons from which voters may choose, but allows room for "the legitimate right of any state to establish necessary election procedures." S. Rep. No. 97-417, 97th Cong., 2d Sess., at 63. Therefore, compliance with both Section 208 and Arkansas's six-voter provision is possible so long as at least one person of the voter's choice is permitted to assist them in the voting booth. An election regulation violates Section 208 not by limiting the universe of assistors from which a voter may choose, but by imposing onto the voter a specific assistor,

thereby denying the voter a choice at all. This makes sense in light of Section 208's purpose, which is to safeguard the voter's right to a secret ballot free from undue influence or manipulation—and not, for example, to guarantee would-be professional assistants the right to accompany voters into the booth.

2. The district court's reading of Section 208 defies common sense.

The district court's opinion stated that, with exceptions not relevant here, "Congress wrote § 208 to allow voters to choose *any assistor they want*." APP527, R. Doc. 179 at 33 (emphasis added). Yet, later in the same opinion the district court itself was compelled to acknowledge that this type of categorical interpretation of the statute is simply not sustainable—as, for example, where a voter chooses as an assistant a person who is committed to the custody of a correctional institution. *See* APP530, R. Doc. 179 at 36.

Persons who are committed to the custody of a correctional institution are unable to assist voters in the booth due to the operation of Arkansas's penal laws. *See, e.g.*, Ark. Code Ann. 5-4-402(b) ("[A] defendant convicted of a misdemeanor and sentenced to imprisonment shall be committed to the county jail or other authorized institution designated by the court for the term of his or her sentence or until released in accordance with law."). The district court's opinion assumes that such laws would *not* be preempted, *see* APP530, R. Doc. 179 at 36—despite an inevitable facial incompatibility between them and the district court's categorical

reading of Section 208 that would "allow voters to choose *any assistor they want*." APP527, R. Doc. 179 at 33 (emphasis added). It is no surprise, then, that the district court abandoned a categorical reading in favor of "a common-sense reading of § 208," which "suggests that any assistor chosen by a voter must be *willing* and *able* to assist" the voter. APP530, R. Doc. 179 at 36.

But it's hard to understand why that rule wouldn't equally justify the limitation at issue here—which likewise limits who is "*able* to assist" the voter. If Section 208 can coexist with Ark. Code Ann. 5-4-402(b) (misdemeanor-commitment statute), then it can certainly coexist with Ark. Code Ann. 7-5-310(b)(4)(B) (six-voter provision). Thus, Arkansas's six-voter provision does not conflict with a principled application of the district court's "common-sense" interpretation of Section 208.

Indeed, other courts have upheld state laws that reasonably narrow a voter's choice of assistant while protecting Section 208's right to a secret ballot. *See Ray*, 2008 WL 3457021, at *7 (Section 208 "does not preclude all efforts by the State to regulate elections by limiting the available choices to certain individuals."); *Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1198 (Ill. APPCt. 2004); *DiPietrae v. City of Philadelphia*, 666 A.2d 1132, 1135-36 (Pa. Commw. Ct. 1995).

The Supreme Court's treatment of analogous, constitutional rights to make certain decisions points to the same conclusion. Consider, for example, a criminal

defendant's Sixth Amendment right to "counsel of his own choice." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Although the right to counsel is fundamental to the American criminal-justice system, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Among other things, an attorney who is not a member of the relevant bar or who has a previous or ongoing relationship with the government or another party is unable to represent a criminal defendant. This rule helps to ensure that the attorney is motivated to act in the criminal defendant's personal interest.

Likewise, Arkansas's six-voter provision is designed to protect voters. It helps to ensure that a voter assistant is motivated to act in the voter's individual interest in a way that a professional voter assistant providing serial assistance to numerous voters is not. Again, the State's compelling interest in election integrity—including protecting the individual voter from undue influence or manipulation—justifies any hypothetical burden posed by the six-voter provision.

In the law, as in other areas of life, choice is virtually never unlimited in the boundless way that a categorical reading of Section 208 would require. Ensuring that voters enjoy the right to a secret ballot free from undue influence or manipulation does not preclude Arkansas from regulating the voting process to accomplish that same end.

## B. Arkansas's six-voter provision does not unduly burden voters' Section 208 rights.

Rather than requiring states to categorically allow voters unfettered discretion in their choice of an assistant, Congress instead created a framework akin to Supreme Court's well-established undue-burden standard for election regulations. Congress expressly "recognize[d] the legitimate right of any state to establish necessary election procedures, subject to the overriding principle that such procedures shall be designed to protect the rights of voters." S. Rep. No. 97-417, 97th Cong., 2d Sess., at 63. "In passing § 208, Congress explained that it would preempt state election laws '*only* to the extent that they *unduly burden* the right recognized in [Section 208], with that determination being a practical one dependent upon the facts.'" *Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 619 (E.D. Mich. 2020), *rev'd on other grounds and remanded*, *Priorities USA v. Nessel*, 860 F. App'x 419 (6th Cir. 2021) (quoting S. Rep. No. 97-417, at 63) (emphases added); *cf. Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020) ("[W]e apply [an undue-burden standard] . . . in considering the constitutionality of a statute implicating the right to vote.").

Therefore, as with all other election-law regulations, a court analyzing a Section 208 claim appropriately "defers to the decision of the elected representatives of the state, provided the challenged regulation does not unduly burden the right to vote." *Ray*, 2008 WL 3457021 at *7. But the district court below rejected the

undue-burden test and instead applied an improperly heightened legal standard to conclude that the six-voter provision was implicitly preempted. APP525-29, R. Doc. 179 at 31-35; *see* APP22, R. Doc. 35 at 8 (rejecting the "undue-burden stand-ard" for a "straightforward conflict preemption analysis"); *see also* APP529 n.14, R. Doc. 179 at 35 n.14 (finding "the State's 'compelling interests' . . . immaterial to the Court's analysis.").

Applying the proper legal standard, the six-voter provision does not unduly burden a voter's right to a secret ballot free from undue influence or manipulation. The six-voter provision is a permissible regulation because it is "reasonable and non-discriminatory." *Ray*, 2008 WL 3457021, at *7; *see Miller v. Thurston*, 967 F.3d 727, 740 (8th Cir. 2020) (absent a severe burden, the only question is whether Arkansas law "is reasonable, nondiscriminatory, and furthers an important regula-tory interest"). Arkansas's six-voter provision does not discriminate on the basis of race, sex, age, disability, religion, or political party. It has not burdened any voter's right to a secret ballot. And although Arkansas need not show any compel-ling interest, *Wash. State Grange*, 552 U.S. at 458, the six-voter provision also serves Arkansas's important, even compelling, interests.

        1.     Plaintiffs have shown no burden at all.

Plaintiffs have no evidence that any voter's right to a secret ballot free from undue influence or manipulation has been burdened—to say nothing of *unduly*

burdened—by the six-voter provision.  Indeed, Arkansas's law has not burdened voters' Section 208 rights because it does not regulate *voters*:  The six-voter provision does not subject a voter who receives assistance at the polls to any penalty whatsoever.  *See* Ark. Code Ann. 7-1-103(a)(19)(C) (prohibiting only "[*p*]*roviding* assistance" to more than six voters (emphasis added)).  Second, as explained above, Plaintiffs do not identify any voter whose choice of assistant was restricted by operation of the six-voter provision.  As in *Nessel*, "[g]iven the lack of evidence that any voters have been affected by the limits on their choice of assistance, there is no basis for the court to conclude that [the State]'s law stands as an obstacle to the objects of § 208." *Nessel*, 487 F. Supp. 3d at 620.[3]  Plaintiffs cannot point to even a single person who lacked access to assistance they needed to vote. APP213, R. Doc. 134-3 at 8; App 139, R. Doc. 134-1 at 45-46; APP328, R. Doc. 134-7 at 26; APP342, R. Doc. 134-8 at 4.  Therefore, the district court erred in concluding that the six-voter provision conflicts with or is an obstacle to Section 208.

---

[3] The Sixth Circuit reversed the district court only because the latter had enjoined the challenged law on other grounds.  *See Priorities USA v. Nessel*, 860 F. App'x 419 (reversing the district court's preliminary injunction).  Therefore, the district court's rejection of the plaintiffs' Section 208 claim remains good law.

2. The six-voter provision serves Arkansas's important and compelling interests in combating fraud, preventing undue influence, and easing burdens on poll workers.

Even if Arkansas's six-voter provision placed some burden on a voter's right to a secret ballot free from undue influence or manipulation (which it does not), in light of the important and compelling interests served by the law, there would be no undue burden. First, "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 684 (2021) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam)); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."); *Ohio Democratic Party v. Husted*, 834 F.3d 620, 635 (6th Cir. 2016) (finding the State's interests in preventing voter fraud and increasing voter confidence by eliminating appearances of voter fraud are "undoubtedly important").

Here, the six-voter provision "is designed to prevent an abuse of the assistance process." APP239, R. Doc. 134-5 at 7; APP283, R. Doc. 134-6 at 8. It prevents professional voter assistants from improperly influencing "multiple people to . . . vote in a certain way for a certain candidate." APP283, R. Doc. 134-6 at 8. Especially pertinent here, the State Board has been notified of individuals suspiciously bringing "elderly people to the polls to vote" in large numbers. *Id.*

Allowing an individual to assist more than six voters would "increase . . . greatly" the threat to election integrity. *Id.*

Besides combating purposeful voter manipulation, "[e]nsuring that every vote is cast freely, without intimidation or undue influence, is also a valid and important state interest." *Brnovich*, 141 S. Ct. at 2340. This interest covers undue influence that falls short of intentional election fraud. That matters because voters who require the assistance of another person "are more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." S. Rep. No. 97-417, 97th Cong., 2d Sess., at 62; *see Ray*, 2008 WL 3457021, at *5 (law furthers the State's important interests in protecting vulnerable populations from fraudulent or manipulative interference with their vote).

The assistance provided by Gonzalez—Arkansas United's "main staff person assigned to the polls," App 135, R. Doc. 134-1 at 41—perfectly illustrates this danger. With professed ignorance concerning important election-related matters, APP213, 218-19, R. Doc. 134-3 at 8, 13-14, Gonzalez nonetheless unduly influenced the choices of voters in the booth, in violation of Arkansas law. APP212, 213, 219, R. Doc. 134-3 at 7, 8, 14; Ark. Code Ann. 7-5-310(b)(4)(A)(i), (ii)(a). As her example demonstrates, even (presumably) well-meaning assistants can improperly influence a voter's decision. The six-voter provision prevents any single

person—regardless of intent—from exercising an improper influence on a substantial number of voters in an election.

Third, Arkansas's six-voter provision serves Arkansas's important interest in easing the burdens on poll workers. Conducting an election is an enormous undertaking that requires poll workers to studiously maintain the polling place and manage voters while strictly following a massive set of federal laws, state laws, and other election procedures. *See generally* APP308-28, R. Doc. 134-7 at 6-25. Recognizing the heavy responsibilities placed on the shoulders of poll workers, Arkansas law does not further burden them with the responsibility to "judge whether an assistant is there for the right reasons or wrong reasons." APP239, R. Doc. 134-5 at 7. Instead, the six-voter provision "is designed to be a structural defense against abuse of the process." *Id.* Given the hectic pace of Election Day, this interest in easing the administrative burdens on Arkansas poll workers is "undoubtedly important." *Husted*, 834 F.3d at 635. Without it, election officials' fulfilling their duty to safeguard the integrity of the polls would be undeniably more difficult.

In sum, in light of the important and compelling interests served by Arkansas's six-voter provision, that law does not unduly burden a voter's right to a secret ballot free from undue influence or manipulation. And because Arkansas's law is justified by the State's compelling interest in the integrity of its electoral process,

*Brnovich*, 141 S. Ct. at 2347, it would satisfy even the stricter scrutiny that is re-served for severely burdensome regulations.

## III. The district court erred in awarding attorney's fees and costs.

The district court erred in awarding Plaintiffs $103,030.43 in attorney's fees and costs. SAPP94, R. Doc. 199 at 11. If this Court reverses on the merits, then Plaintiffs are no longer prevailing parties entitled to fees and costs, and the fee award must also be reversed.

Even setting aside the prevailing-party requirement, the district court based its award on an inapplicable fee statute and then compounded that error by refusing to reduce the award to account for Plaintiffs' failure to obtain injunctions of half of the laws they challenged. The district court likewise erred in awarding Plaintiffs fees for work related to their ill-conceived preliminary-injunction motion, and it abused its discretion in awarding excessive fees and costs.

### A. Only prevailing parties are entitled to fees and costs.

The district court awarded fees and costs under 52 U.S.C. 10310(e), which provides that fees and costs may be allowed to a "prevailing party" in language that is substantially identical to 42 U.S.C. 1988(b). Under that language, a "plaintiff must be a 'prevailing party' to recover an attorney's fee." *Hensley v. Eckhert*, 461 U.S. 424, 433 (1983). As explained above, the judgment in favor of Plaintiffs must be reversed. Plaintiffs' prevailing-party status evaporates when that

judgment is reversed, and the district court's fee award must likewise be reversed. *See Advantage Media, L.L.C. v. City of Hopkins*, 511 F.3d 833, 838-39 (8th Cir. 2008).

B.    <u>There is no statutory basis for fees and costs.</u>

Even if Plaintiffs were to ultimately prevail, they aren't entitled to any award of attorney's fees or costs. "In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (quoting *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001)). "An exception to this general rule applies when Congress has provided explicit statutory authority for awarding fees to a prevailing party." *Id.*

The district court's asserted basis for awarding fees is a statute that allows an award only in an "action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. 10310(e); *see* SAPP87, R. Doc. 199 at 4. But Plaintiffs did not allege that their action was one to enforces the Fourteenth or Fifteenth Amendment. *See* APP26, R. Doc. 79. Rather, the basis of their suit is Section 208's prophylactic rule that affords certain voters' discretion in choosing a voting assistant. 52 U.S.C. 10508. *Cf. Ark. State Conf.*, 86 F.4th at 1213 n.3 ("By focusing solely on the discriminatory impact of Arkansas's new map, not intentional discrimination, the advocacy groups are not attempting to

enforce the voting guarantees of the fourteenth or fifteenth amendment." (internal quotation omitted)); *but see Bone Shirt v. Hazletine*, 524 F.3d 863,865 (8th Cir. 2008) (assuming without deciding that Section 10310(e) applied to a Section 2 lawsuit).

The Supreme Court recognizes that suits to enforce even "constitutionally based" prophylactic rules don't enforce the Constitution. *Vega v. Tekoh*, 597 U.S. 134, 142 (2022) (rejecting the claim that "a violation of *Miranda* constitutes a violation of the Fifth Amendment"). Section 208 plainly goes beyond the Constitution. *Cf. Allen v. Milligan*, 599 U.S. 1, 11 (2023) (Fifteenth Amendment prohibits purposeful discrimination but not laws that discriminate only in effect). Therefore, it "is wrong," *Vega*, 597 U.S. at 142, to say that a suit to enforce Section 208's prophylactic rule seeks to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. 10310(e).

Plaintiffs "bear[] the burden of establishing entitlement to an award." *Hensley*, 461 U.S. at 437. But because there's no statute entitling them to an award of fees and costs, they can't do that. Plaintiffs must bear their own costs, and the Court should reverse.

C.      <u>Plaintiffs failed to get injunctions on half the laws they challenged.</u>

Plaintiffs challenged four Arkansas statutes. APP37, R. Doc. 79 at 22. The first prohibits anyone other than a poll worker from assisting more than six

disabled voters. *Id.* 7-5-310(b)(4)(B). The second requires every person assisting a disabled voter to provide his or her name and address to be tracked with a list maintained by poll workers. *Id.* 7-5-310(b)(5). The third requires that assistance to *any* voter must accord with both the six-voter provision and the tracking requirement. *Id.* 7-1-103(a)(19)(C). And the fourth creates a misdemeanor penalty for violation of either the six-voter provision or the tracking requirement. *Id.* 7-1-103(b)(1).

The district court enjoined only half of the laws Plaintiffs challenged. APP526-532, R. Doc. 179 at 32-38. To be sure, it granted Plaintiffs' request to enjoin Arkansas's six-voter provision, Ark. Code Ann. 7-5-310(b)(4)(B)—an injunction that this Court has stayed. *Ark. United v. Thurston*, No. 22-2918, Entry ID No. 5202512 (Sept. 28, 2022). But the district court refused to enjoin the tracking requirement. *Id.* 7-5-310(b)(5). It recognized that law is "permissible state legislation" and held that it is "not preempted by § 208." APP531, R. Doc. 179 at 37. The district court likewise refused to enjoin the tracking requirement's criminal penalties. *See* APP533, R. Doc. 179 at 39, (enjoining provisions *only* "to the extent they are used to enforce criminal penalties for violations of [the six-voter provision].").

So—despite Plaintiffs' claim that Section 208 preempts the tracking requirement and its criminal penalties—no injunction prevents Arkansas from requiring

persons assisting Arkansas voters to provide their names and addresses for tracking by poll workers, and the criminal penalties still apply. *See id.* So the district court didn't grant "actual relief on the merits of [Plaintiffs'] claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Plaintiffs plainly didn't "prevail[]" on this issue. *Id.* So the district court legally erred in awarding attorney's fees on these claims.

"[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. Here Plaintiffs succeeded on half of their requests and failed on the other half. But to justify a higher fee award, the district court rhetorically minimized Plaintiffs' failure to obtain the half they lost. First, it wrongly asserted that the tracking issue was "subsumed" in the six-voter issue. SAPP89, R. Doc. 199 at 6. And, second, it tendentiously spun Plaintiffs' unequivocal half-loss as "less-than-complete success." SAPP89, R. Doc. 199 at 6. But even assuming that Plaintiffs' separate claims "[a]re interrelated," awarding unreduced fees for "only partial or limited success" is "excessive." *Hensley*, 461 U.S. at 436. So the district court's fee award was legal error.

Further, "in a suit in which plaintiffs were only partially successful," the Court will lack "sympathy" for plaintiffs' fee claims "if counsel's records do not provide a proper basis for determining how much time was spent on particular

claims." *Id.* at 437 n.12 (quotation omitted). Plaintiffs failed to provide any such basis here, and to compound matters, the district court effectively resolved against *Arkansas*, Plaintiffs' failure to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437; *see* SAPP89, R. Doc. 199 at 6 (recognizing that Plaintiffs' "billable hours *solely attributable* to the tracking requirement" were very few (quotation omitted) (emphasis added)). That is also legal error.

To be sure, the district court made some modest reductions in Plaintiffs' requested fees on *other* grounds, reducing some claimed rates and hours, SAPP91, R. Doc. 199 at 8, and disallowing Plaintiffs' cloud-hosting fees. SAPP93, R. Doc. 199 at 10. But these reductions at the margins fail to account for Plaintiffs' loss on fully half of their claims.

D.    Plaintiffs shouldn't get fees for their ill-fated Election Day stunt.

Next, the district court legally erred in awarding Plaintiffs fees for work related to the ill-fated preliminary-injunction motion that was filed "less than two hours before Election Day." R. Doc. 35 at 3.

It is perverse for the district court to award attorney's fees to Plaintiffs for trying to sow chaos by filing their motion for preliminary injunction for a decision on Election Day. That motion was calculated to do nothing more than create confusion at the polls. As the district court explained in its order denying a

preliminary injunction, "Election Day voting began several hours ago now, and several hours still remain"; "[g]ranting any of [Plaintiffs'] requests would alter the procedures of an election that is already unfolding." *Id.* at 9, 10. The Court noted that the laws Plaintiffs challenged had been on the books for over a decade, and "Plaintiffs have not offered any explanation why they waited" until the November 2020 general election "to bring this suit." *Id.* at 10.

The district court's award of attorney's fees for Plaintiffs' preliminary-injunction motion—which they lost—ignores that "[a]ny award for time spent on matters on which a plaintiff lost . . . must be reasonable, considering . . . the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested." *Emery v. Hunt*, 272 F.3d 1042, 1047-48 (8th Cir. 2001) (quotation omitted). Plaintiffs' preliminary-injunction motion was neither necessary nor useful. The district court legally erred in rewarding Plaintiffs' bad behavior, and this Court should reverse.

E.    Plaintiffs' fees and costs are excessive.

The district court also awarded fees at excessively high rates for the Arkansas legal market. It approved Nina Perales at $400.00/hr (for her 30 years' experience), Griselda Vega Samuel at $350/hr (for her 19 years' experience), Susana Sandoval Vargas at $175/hr (for her 10 years' experience) and Francisco

Fernandez de Castillo at $175/hr (for his two years' experience). SAPP91-92, R. Doc. 199 at 8-9; *see* SAPP25-30, R. Doc. 174-1 at 4-9.

The anomalous nature of these hourly rates is shown by the fact that the same district court held not long ago that $300/hour would be a "high" rate even for "excellent and legally complex" civil rights work in the Arkansas legal market. *Am. Humanist Ass'n v. Baxter Cnty.*, No. 3:14-CV-3126-TLB, 2016 WL 524654, at *2 (W.D. Ark. Feb. 5, 2016). And even though the district court relies on *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 998 (8th Cir. 2012), for its $400/hr rate, that reliance is misplaced, as the opinion expressly notes that it "ha[d] not been specifically challenged." *Id.*

The awarded rates are "much higher than those requested and approved in recent, comparable cases that were litigated" in federal district courts in Arkansas." *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031-SWW, 2015 WL 11090626, at *2 (E.D. Ark. Nov. 2, 2015); *see, e.g.*, *Francis v. Gamdan Servs. LLC*, No. 4:22-CV-00094-BRW, 2022 WL 2990705 (E.D. Ark. July 28, 2022) ($250/hr for attorney with 21 years' experience, $175/hr for an attorneys with 18 years' experience, $125/hr for attorney with 3 years' experience, and $100/hr for attorney with 2 years' experience); *Bailey v. Jefferson Cnty.*, No. 5:18-CV-222-DPM, 2021 WL 4849077, at *1 (E.D. Ark. Oct. 18, 2021) ($250/hr for attorney with 20 years' experience and $200/hr for attorneys with 14 and 7 years'

experience); *Rounds v. S. Heritage Health & Rehab., LLC*, No. 5:12-CV-276-DPM, 2015 WL 1119955, at *1 (E.D. Ark. Mar. 6, 2015) (finding $300/hr unreasonable for attorney with 23 years' experience).

Attorney's fees are not "intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Rather, a reasonable fee is one that is sufficient to induce a capable attorney in the same market to undertake the representation of a meritorious case while not producing a windfall to Plaintiffs' counsel. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Fees are not intended as "a form of economic relief to improve the financial lot of attorneys." *Del. Valley Citizens' Council*, 478 U.S. at 565.

The district court likewise abused its discretion in awarding Plaintiffs costs and fees that were unnecessarily incurred. For example, Plaintiffs spent $3,801.93 just to *serve the Complaint*. SAPP77, R. Doc. 174-1 at 56. Instead of simply asking Defendants' counsel to accept service via email (as is standard practice among those with actual knowledge of the Arkansas legal market), Plaintiffs paid a process server to make multiple (and unsuccessful) attempts to serve the 18 Defendants they sued. *Id*. And that cost doesn't include Plaintiffs' counsel's billing for numerous time entries related to accomplishing service. *See* SAPP72-75, R. Doc.

174-1 at 51-54 (time entries).  It is an abuse of discretion to charge Defendants for Plaintiffs' misadventures and excesses.

Further, although the district court reduced Vega Samuel's hours by 25% for her inscrutable billing entries, a complete reduction of her fees is appropriate.  The descriptions of Vega Samuel's work in her time records are so vague and cryptic as to be close to useless.  *See* SAPP49-55, R. Doc. 174-1 at 28-34.  There is not enough information or context to discern what a substantial portion of her billing entries mean—let alone to evaluate the reasonableness or necessity of the time recorded for the work it represents.  *See id.*  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433; *accord Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 651 (8th Cir. 2022).

F.  <u>The district court's award diverts funds from important Arkansas programs.</u>

Finally, the district court erred by failing to adequately consider that "attorney's fees awarded under [federal law] are not paid by the individuals responsible for the constitutional or statutory violations on which the judgment is based."  *Perdue*, 559 U.S. at 559.  "Instead, the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services."  *Id.*; *cf. Horne v. Flores*, 557 U.S. 433, 448 (2009) (payment of money pursuant to a federal-court order diverts funds from important state and

local programs). Because "vital public services" to the people of Arkansas are reduced by any fee reward, *Perdue*, 559 U.S. at 559, the district court's fee award was error and should be reversed.

## CONCLUSION

For the foregoing reasons, the Court should reverse, vacate the injunction, and remand with instructions to enter judgment in favor of Defendants.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

MICHAEL A. CANTRELL
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2401
Dylan.Jacobs@ArkansasAG.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because it contains 10,076s words, excluding the parts exempted by Fed. R. App. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/  Dylan L. Jacobs*
Dylan L. Jacobs

## CERTIFICATE OF SERVICE

I certify that on June 10, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/ Dylan L. Jacobs*
Dylan L. Jacobs