NO. 22-2918

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

ARKANSAS UNITED, et al.,

*Plaintiffs-Appellees*,

v.

JOHN THURSTON, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Arkansas
The Honorable District Judge Timothy L. Brooks
Case No. 5:20-cv-5193

**BRIEF OF AMICI CURIAE STATES OF NEBRASKA, ALABAMA, ALASKA, FLORIDA, GEORGIA, INDIANA, KENTUCKY, LOUISIANA, MISSISSIPPI, MONTANA, NEW HAMPSHIRE, OHIO, OKLAHOMA, SOUTH CAROLINA, TENNESSEE, TEXAS, UTAH, AND WEST VIRGINIA SUPPORTING DEFENDANTS-APPELLANTS' MOTION TO STAY INJUNCTION**

DOUGLAS J. PETERSON
  *Attorney General*
JAMES A. CAMPBELL
  *Solicitor General*
CHRISTIAN EDMONDS
  *Assistant Solicitor General*
OFFICE OF THE NEBRASKA
  ATTORNEY GENERAL
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTERESTS OF AMICI CURIAE ......................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 1

ARGUMENT ......................................................................................... 2

I. *Purcell* weighs against enjoining Arkansas's election law so close to an election ............................................................... 2

CONCLUSION ...................................................................................... 7

CERTIFICATE OF COMPLIANCE ..................................................... 10

CERTIFICATE OF SERVICE .............................................................. 11

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Arizona Democratic Party v. Hobbs,*
  976 F.3d 1081 (9th Cir. 2020) ................................................................ 6

*Brnovich v. Democratic Nat'l Comm.,*
  141 S. Ct. 2321 (2021) ............................................................................ 6

*Carson v. Simon,*
  978 F.3d 1051 (8th Cir. 2020) ................................................................ 3

*Common Cause Indiana v. Lawson,*
  978 F.3d 1036 (7th Cir. 2020) ................................................................ 7

*Husted v. Ohio State Conference of NAACP,*
  573 U.S. 988 (2014) ................................................................................ 3

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State,*
  32 F.4th 1363 (11th Cir. 2022) .............................................................. 4

*Merrill v. Milligan,*
  142 S. Ct. 879 (2022) ............................................................................. 2

*New Georgia Project v. Raffensperger,*
  976 F.3d 1278 (11th Cir. 2020) .............................................................. 7

*Org. for Black Struggle v. Ashcroft,*
  978 F.3d 603 (8th Cir. 2020) .................................................................. 3

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) ............................................................................... 2, 6

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
  140 S. Ct. 1205 (2020) ........................................................................... 3

*Suntharalinkam v. Keisler,*
  506 F.3d 822 (9th Cir. 2007) .................................................................. 5

*Thompson v. Dewine,*
  959 F.3d 804 (6th Cir. 2020) .................................................................. 3

*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) ................................................................................ 6

# INTERESTS OF AMICI CURIAE

Amici Curiae are the States of Nebraska, Alabama, Alaska, Florida, Georgia, Indiana, Kentucky, Louisiana, Mississippi, Montana, New Hampshire, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, and West Virginia. We submit this brief in support of Arkansas's motion for a stay pending appeal under the States' authority in Fed. R. App. P. 29(a)(2) to file amicus briefs "without the consent of the parties or leave of court."

Amici States have a compelling interest in protecting state elections and avoiding the confusion caused by last-minute changes to election procedures. The district judge deferred judgment on this time-sensitive matter for nearly a year before issuing a decision just weeks before the start of Arkansas's elections. When federal courts change election rules on the eve of elections and after officials have been trained, it causes confusion and disorder for citizens and election officials alike. Amici States have a strong interest in avoiding that.

# INTRODUCTION AND SUMMARY OF ARGUMENT

The district court waited over ten months after summary-judgment briefing concluded to issue its ruling in this case. As a result, Arkansas

1

now must implement changes just weeks before the beginning of its election, long after election officials have been trained. The *Purcell* doctrine counsels against this.

The district court suggested that *Purcell* is not implicated because the State need only send a memorandum detailing the changes mandated by its ruling. But election officials throughout the State have already been trained for the upcoming election. Sending them a last-minute memorandum changing what they were already taught is a recipe for confusion. The *Purcell* doctrine thus weighs in favor of staying the district court's injunction pending appeal.

## ARGUMENT

### I. *Purcell* weighs against enjoining Arkansas's election law so close to an election.

After waiting nearly a year to issue an opinion, the district court entered an injunction just weeks before Arkansas's election. This contravenes the *Purcell* principle, which instructs courts to refrain from enjoining state election laws when elections are just around the corner. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam); *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of applications for stays) ("[F]ederal courts ordinarily should not enjoin a state's

2

election laws in the period close to an election"); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020) (per curiam) (The "well established" *Purcell* principle directs federal courts to "usually refrain from interfering with state election laws in the lead up to an election."). Since Arkansas's election begins on October 24, 2022—just over a month away—the district should have maintained the status quo (Arkansas's duly-enacted election law) to "promote[] confidence in our electoral system." *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020).

The timeline between now and the election is well within *Purcell*'s admonition against federal courts' enjoining state election laws in the lead up to an election. For example, in *Husted v. Ohio State Conference of NAACP*, 573 U.S. 988 (2014) (mem.), the Supreme Court stayed an injunction of an election law entered 61 days before the election. In *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020), the Sixth Circuit

3

stayed a district court's order suspending Ohio's enforcement of an election requirement imposed "months" before election day. And in *League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 32 F.4th 1363, 1371 (11th Cir. 2022) (per curiam), the Eleventh Circuit recently stayed an injunction when "voting in the next statewide election was set to begin in *less* than four months." Because Arkansas's election is less than two months away, *Purcell* controls the State's motion for a stay pending appeal.

Despite this, the district court here said that it "does not expect" *Purcell* to be implicated because it did not order the State "to conduct updated formal trainings" or "produce an updated training manual" before the election. R. Doc. 179, at 39. Instead, the court ordered the defendants to (1) "simply inform" employees and volunteers not to "enforce the six-voter limit" and (2) "send a memorandum to all county election boards." *Id.*

Yet without new training sessions and manuals—which the district court admitted would burden state election officials, *id.* at 38–39—the court expects the change in election requirements to be taught by memo-

4

randum and word of mouth. This would necessitate a lengthy communication chain, starting with the State Board of Election Commissioners sending a memorandum to the county election boards attempting to explain the changes. After that, the county election boards in all 75 Arkansas counties would inform their staff of the revisions and explain how to administer them. Then the staff would teach the volunteers. All this will occur against the backdrop of these election officials already having been trained to follow a different set of rules. *See* R. Doc. 170-1, at 1.

This long chain of communication risks creating confusion. "As we know from playing 'Telephone,' the longer the communication chain, the more likely there is to have been a misunderstanding." *Suntharalinkam v. Keisler*, 506 F.3d 822, 831 n.9 (9th Cir. 2007). State officials telling local officials, who tell staff, who tell volunteers—this process is filled with potential for confusion and disorder.

Worse yet, the likelihood of confusion from these last-minute, largely word-of-mouth changes might prompt some of the local election officials in Arkansas's 75 counties to schedule supplemental training sessions. But the district court has already conceded that additional

5

training sessions would impose a burden. R. Doc. 179, at 38–39. If county officials choose that course to mitigate the risks of confusion and error, that will consume time and resources, which are particularly precious in the lead up to an election. And if local officials in some of the 75 counties implement additional training while others do not, that raises the prospect of uneven enforcement across the State.

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2347 (2021) (quoting *Purcell*, 549 U.S. at 4); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 352 (1997) ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."). But last-minute court-imposed election changes too often compromise this vital interest, and that is certainly the case here, where the district court waited almost a year after the parties completed their briefing before issuing its ruling.

In recent years, cases have swamped federal courts with eleventh-hour demands to alter election rules. *See Arizona Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) ("[A]s we rapidly approach

the election, the public interest is well served by preserving [the State's] existing election laws, rather than by sending the State scrambling to implement and to administer a new procedure . . . ."); *Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1043 (7th Cir. 2020) (staying injunction entered close to election); *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020) (similar). In this case, the last-minute nature of the injunction is attributable to the district court's inexplicable delay in ruling. But regardless of the cause, the result is the same. States are left to scramble to try to implement changes right before an election, and the clarity that is so critical to election integrity is sacrificed in the process. States should not be forced to continually face these election-related fire drills.

## CONCLUSION

Implementing the district court's decision in time for the 2022 election is a recipe for confusion. This is exactly what the *Purcell* principle forbids. For that reason, the Court should stay the district court's injunction pending an appeal.

7

Respectfully submitted,

Dated: September 16, 2022                    */s/ James A. Campbell*

DOUGLAS J. PETERSON
  *Attorney General*
JAMES A. CAMPBELL
  *Solicitor General*
CHRISTIAN EDMONDS
  *Assistant Solicitor General*
OFFICE OF THE NEBRASKA
  ATTORNEY GENERAL
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
jim.campbell@nebraska.gov

8

# ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TREG R. TAYLOR
Attorney General
State of Alaska

ASHLEY MOODY
Attorney General
State of Florida

CHRIS CARR
Attorney General
State of Georgia

THEODORE E. ROKITA
Attorney General
State of Indiana

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

AUSTIN KNUDSEN
Attorney General
State of Montana

JOHN M. FORMELLA
Attorney General
State of New Hampshire

DAVE YOST
Attorney General
State of Ohio

JOHN M. O'CONNOR
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

JONATHAN SKRMETTI
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

SEAN D. REYES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 1,324 words as determined by the word-counting feature of Microsoft Word 2016.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point proportionally spaced Century Schoolbook.

And this brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using FireEye Endpoint Security and no virus was detected.

<u>/s/ James A. Campbell</u><br>
James A. Campbell

# CERTIFICATE OF SERVICE

I certify that on September 16, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that all parties to this case are represented by counsel of record who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ James A. Campbell*
James A. Campbell
